# Peter O. Holmquist et al., Appellants, v. M. Dencer Company, Appellee.

## Gen. No. 16,852.

CONTRACTS—*how to be construed*. In construing a contract the sense in which the person making the promise believed the other to have accepted it, if he in fact did so understand and accept it, must control.

Assumpsit. Appeal from the Municipal Court of Chicago; the HON. JOHN H. HUME, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed April 19, 1912.

ALLEN G. MILLS, for appellants.

COLEMAN S. EVERETT, for appellee; JOHN C. EVERETT, of counsel.

MR. JUSTICE CLARK delivered the opinion of the court.

Suit was brought by the appellants, as plaintiffs, in the Municipal Court of Chicago against the appellee, as defendant, to recover the sum of $1,200 alleged to have been expended by the plaintiffs in replacing a boiler in certain premises that had been leased from the defendant. The suit was in assumpsit and belongs to what is known as the "first class". The case was tried before the court without a jury. There was a finding for defendant, upon which judgment was entered in favor of the defendant and against the plaintiffs for costs.

The pleadings consisted of the declaration and a plea of the general issue. The lease on which the suit is based was made on April 7, 1909, by the defendant, a corporation, to the plaintiffs, doing business as Holmquist & Co. The property leased was a manufacturing plant, and included a boiler. The covenant respecting the boiler reads as follows:

"The party of the first part hereby agrees to place the boiler in said demised premises in good working

order, if the same is not so, and the said second party agrees to keep said boiler in repair thereafter, but in the event of the condemnation of said boiler, due to ordinary wear and tear, by the city authorities, the said party of the first part hereby agrees to replace said boiler.''

Possession of the premises was taken by plaintiffs shortly after the execution of the lease. The plant was operated during the summer months, but apparently the boiler was not capable of producing enough steam with the pressure to which it could safely be subjected to operate all of the machinery of the plaintiffs in a satisfactory manner.

There is testimony to the effect that the boiler was inspected in the month of October by the city authorities and possibly prior to that time. On November 13th the plaintiffs received through the mail the following letter, signed by J. J. Houlihan, Chief Inspector of Steam Boilers and Steam Plants. This letter was apparently written on an official letter-head, indicating that the writer was employed by the city in the capacity mentioned.

''On a reinspection of boiler No. 1 in your plant, inspector reports the following condition.

Shell plates on bottom, internal, are pitted from 10 to 15%. This pitting extends from front to rear head. Also first sheet over fire is pitted internally in several places about 10%. Both heads of this boiler are very poorly braced, and on account of age and present condition of shell, a greater pressure than 60 lbs. will not be allowed by this department.

Boiler is condemned by this department for any pressure greater than 60 lbs.''

A great deal of testimony was introduced, without objection, detailing conversations between the parties prior to the execution of the lease. Some of these were with a Mr. Kent of the firm of Alex Friend & Co., real estate agents who negotiated the lease, and had to do

more or less with the suggestion or proposition that plaintiffs buy the property. In one or more of these conversations Mr. Dencer, acting for the defendant, was present. As to what was said in these conversations, there is conflict in the testimony. Dencer insists that he did not at any time say anything about the power of the plant. He admitted, however, that he said, "If the city condemns the boiler, I will put in a new one." He also stated that when he gave up running the plant he believed it was of 70 horse-power. He further testified that he did not authorize Friend & Co. or anyone else to represent that it was a 100 horse-power plant.

The testimony of Mr. Kent was offered by the plaintiffs, and he stated that Mr. Holmquist said that he required a 100 horse-power capacity, and that he was told that the plant was of about that capacity.

If it be assumed that the notice above set forth was admissible as showing the attitude of the city authorities respecting the boiler, the question to be determined first is whether it shows such a condemnation by the city authorities as would require the defendant, under its contract, to install a new boiler. The lease contains the usual provision that the premises were in good order when received. The covenant added to the printed form required the defendant to "place the boiler * * * in good working order, if the same is not so." There is no proof in the record that the boiler was not in good condition when the plaintiffs went into possession. No demand was made by plaintiffs upon the defendant that repairs be made during the several months that elapsed between the time possession was taken and the date of the notice from the city inspector, above set forth.

The contention of the plaintiffs, as we understand it, is that while the covenant to put the boiler in good repair, or replace the same in the event of condemnation, does not imply a warranty that the boiler should

produce 100 horse-power, yet as it was shown the boiler in question was of a size sufficient to give 100 horse-power and that the plaintiffs were prevented from working it to that capacity because of the inhibition placed by the city authorities, the defendant, by the covenant, was required to replace the same.

We have no way of determining from the record whether the shell plates on the bottom of the boiler, which in the notice are said to have become pitted from 10 to 15 per cent., became so pitted after possession was taken by the plaintiffs, or whether the sheet over the fire in the boiler also became pitted after the plaintiffs took possession. In other words, the testimony does not show whether the defects were due to ordinary wear and tear, or to the failure of the plaintiffs to keep the boiler in repair, as by the covenant they were required to do. If the parties intended that the defendant should place a new boiler in the premises whenever the pressure to which the old boiler might safely be subjected became less than 100 pounds, such provision should have been inserted in the lease. If, also, it had been the intention of the parties that a new boiler should be placed in the building whenever it became apparent that the old boiler would not produce 100 horse-power, a provision to that effect should have been inserted.

We agree with counsel for plaintiffs that in construing a contract, the sense in which the person making the promise believed the other to have accepted it, if he in fact did so understand and accept it, must control. In this case, however, we are unable to say that the defendant believed that the plaintiffs in entering into the contract understood the provision to convey the meaning now placed upon it by counsel for plaintiffs. This construction cannot be placed upon the provision unless there be read into it a warranty as to the amount of pressure.

It must have been perfectly apparent to the plaintiffs

that the boiler was an old one. We think it would be fair to assume that they knew it could not in all probability be safely subjected to as great a pressure as a new one. By their contract they undertook to keep it in repair. Whether or not they did so is not shown by the record. We agree with the trial court that they are not entitled to a judgment against the defendant for the amount expended in the purchase and installation of a new boiler.

The judgment will therefore be affirmed.

*Affirmed.*